# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MARY M. MCCOMBS,**

     **Plaintiff,**

                                  **Civil Action 2:09-cv-332**

**vs.**                              **Judge James L. Graham**

                                  **Magistrate Judge E. A. Preston Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## OPINION AND ORDER

Plaintiff, Mary M. McCombs, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits.  This matter is before the Court for consideration of Plaintiff's July 8, 2010 Objections (Doc. 16) to the United States Magistrate Judge's June 30, 2010 Report and Recommendation (Doc. 15), recommending that the Court affirm the decision of the Commissioner denying benefits.  For the reasons stated below, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation.  Accordingly, the Commissioner's decision is **AFFIRMED.**

# I.

Plaintiff alleges that she became disabled at the age of 24 from anxiety.[1]  At the hearing, Plaintiff testified that she has been depressed for the past ten years, and that her depression has been getting worse.  Plaintiff reported she has a fear of riding in an automobile and that her "anxiety is bad" when she rides in a car.  (R. at 374, 376, and 380.)  She acknowledged, however, that she continues to ride in cars daily and that her typical day involves riding over to her aunt's house.  Plaintiff's brother also indicated that she rode in cars daily to visit with others at their aunt's house.  Plaintiff also rode in cars to go the store, the bank, and to her doctors' appointments.  Plaintiff last worked in 2001 in a deli/bakery.  On May 24, 2005, Plaintiff filed her application for disability insurance benefits.[2]

In March 2002, Dr. Sarver, a state agency psychologist, evaluated Plaintiff.  Dr. Sarver found Plaintiff to have a normal affect, no motoric indications of depression or anxiety, no difficulty with attentional pace or persistence, average memory, and average common sense.  Dr. Sarver noted that Plaintiff had no problem saying the alphabet from A to Z or counting backwards from 20 to 0.  He concluded that Plaintiff was mildly to minimally limited in work-related areas of functioning.  In January 2007, Dr. Sarver evaluated Plaintiff again.  Plaintiff

---

[1]In addition to psychological impairments, the administrative law judge ("ALJ") determined that Plaintiff suffered from the severe physical impairment of obesity as well as a number of non-severe physical impairments.  On appeal, however, Plaintiff's arguments relate only to psychological impairments.  Consequently, this Opinion and Order, like the Magistrate Judge's Report and Recommendation and the parties' briefing, focuses primarily on testimony and evidence concerning Plaintiff's alleged psychological impairments.

[2]There is a prior, unfavorable Administrative Law Judge decision dated May 25, 2004, which the Appeals Council found no basis for review.  Because Plaintiff did not further appeal this decision, it is a final and binding determination on the issue of disability through the date of that decision.

reported that she had no friends.  She further reported that she lived with her boyfriend who had been receiving SSI benefits for the past ten years, but that she was not sure why her boyfriend was receiving those benefits.  She represented that she felt that she was unable to work because she gets too scared.  Plaintiff indicated that she quit her last job when she hurt her foot.  Dr. Sarver reported that Plaintiff's complaints and mood were "inconsolably exaggerated."  (R. at 678.)  He noted no motoric indications of depression or anxiety.  He found Plaintiff's speech and language to be normal.  He further found that Plaintiff had no difficulty with attentional pace or persistence; her stream of thought appeared appropriate; and her memory was functionally intact.  Dr. Sarver opined that Plaintiff's reading and writing were not functional because she had difficulty filling out the release of information form and because she could not recite the alphabet or count backwards from 20 to 0.  Dr. Sarver reported Plaintiff's common sense and abstract reasoning as borderline.  In addition, Dr. Sarver diagnosed Plaintiff with adjustment disorder with depression and anxiety; social phobia (social anxiety disorder); generalized anxiety disorder; and histrionic personality disorder with dependent features.  Dr. Sarver concluded that Plaintiff had significant limitations in her ability to relate to others, including supervisors; mild limitations in her ability to understand and follow one and two-step instructions; a variable ability to maintain attention to perform simple, repetitive job tasks; and significant limitations in her ability to manage daily work stresses.

In September 2001, Dr. Yee performed a psychological evaluation of Plaintiff in connection with her second application.  When Dr. Yee asked Plaintiff why she was disabled, Plaintiff reported that she was disabled due to an anxiety disorder, obsessive-compulsive disorder ("OCD"), and leg, back, and ankle problems.  Plaintiff reported that she stopped working at her

last job when the store closed.  Plaintiff denied any problems of getting along with co-workers, although she did indicate that she had some disagreements with past supervisors.  She reported problems with memory, attention, and concentration.  Plaintiff also reported having crying spells and having feelings of hopelessness, helplessness, guilt, and worthlessness.  She indicated that she got nervous or anxious when she was in a car or had appointments.  Plaintiff also indicated that she is easily irritated and throws things ten times a month.  She reported that her memory was impaired ever since she had a stroke.[3]  Plaintiff also reported that she would spend her days watching television and lying in bed.  She indicated that she had few friends and that she did not socialize.  Plaintiff further indicated that she and her boyfriend shared the shopping, cleaning, and cooking duties. She reported fair writing and reading skills, and basic arithmetic skills.  Dr. Yee noted that Plaintiff spoke directly and without any flight of ideas.  Her associations were well-organized, and Plaintiff's "speech was 100% intelligible," although she offered some irrelevant information.  (R. at 470.)  Dr. Yee further noted that Plaintiff displayed good eye contact.  She described Plaintiff's affect as normal, but her affect quality as anxious.  Dr. Yee noted that Plaintiff was distracted, but that her pace and persistence were moderate, and she was on task.  Dr. Yee determined that Plaintiff's insight and judgment were average.  She diagnosed Plaintiff with generalized anxiety disorder and personality disorder with obsessive compulsive traits.  Dr. Yee opined that Plaintiff was mildly impaired in her ability to relate to others, including fellow co-workers, and in her ability to maintain concentration, persistence, and pace to perform repetitive tasks.  Dr. Yee further opined that Plaintiff was moderately impaired in her ability to understand, remember, and follow instructions and to withstand stress and pressure

---

[3]The record contains no medical evidence indicating that Plaintiff had a stroke.

associated with day to day work activity.

From May 2003 through November 2006, Plaintiff saw her family practice physician, Dr. Schreck, for a variety of routine health issues.  In July 2004, at the request of the state agency, Dr. Schreck dictated two narratives describing Plaintiff's conditions.  Although the narratives primarily discussed Plaintiff's physical condition, Dr. Schreck did note that Dr. Messerly of Tri-County Mental Health had diagnosed Plaintiff with generalized anxiety disorder, OCD, and eating disorder and that Plaintiff was being treated for these disorders there.  Dr. Schreck also reported that because of these psychiatric diagnoses, Plaintiff had "problems meeting and working with other individuals" and she was "reticent to engage and carry on conversations for any length of time with other individuals."  (R. at 575.)  Dr. Schreck stated that Plaintiff's psychiatric conditions caused "difficulties with concentrating and paying attention."  Plaintiff reported to Dr. Schreck that "she loses her attention span and then she makes mistakes and cannot continue with any of her work duties." (R. at 579.)  Finally, Dr. Schreck stated that Plaintiff's "behavior can be erratic and she cannot work under any pressures."  (*Id.*)  In April 2006, Dr. Schreck completed a mental functional capacity evaluation form.  He reported that Plaintiff had marked limitations in all functional criteria.  Under diagnoses, he cited OCD, generalized anxiety disorder, and eating disorder.

In September 2003, Plaintiff sought mental health treatment at the Tri-County Mental Health Center ("Tri-County").  Counselor Bonnie deLange performed an intake assessment, diagnosing Plaintiff with OCD and panic disorder without agoraphobia.  After intake, the record indicates that Plaintiff saw Counselor Judith Serna twice for counseling, once in September 2003

and once in October 2003.[4]  There are no notes relating to these visits.

In February 2004, Plaintiff began seeing Dr. Messerly, a Tri-County psychiatrist. Plaintiff reported having anxiety since childhood.  She indicated that she had been experiencing panic attacks for ten years and OCD symptoms for three years.  Dr. Messerly diagnosed generalized anxiety disorder, OCD, and a eating disorder.  In March and April 2004, Plaintiff saw Dr. Messerly again for medication monitoring.  Plaintiff indicated that she felt better and was sleeping well.  Dr. Messerly noted that Plaintiff appeared less anxious, relaxed, spontaneous, and alert.  She concluded that Plaintiff should continue her present course of medication and was ready for transfer back to Dr. Schreck, Plaintiff's primary care physician.

On June 8, 2004, approximately two weeks after the ALJ denied Plaintiff's first application,  Plaintiff requested that Dr. Messerly write a letter regarding her ability to work. Although Dr. Messerly did not draft such a letter, Counselor Judith Serna drafted a letter reporting it was her "strong opinion" that Plaintiff was unable to be gainfully employed.  In this letter, Counselor Serna noted that although Plaintiff's current medication regimen had greatly helped her sleep, she continued to present with symptoms of severe anxiety that precluded her ability to drive and caused her great distress.

In September 2004, Plaintiff returned to Tri-County with complaints of OCD symptoms, compulsive eating, and hallucinations.  She requested to see Dr. Messerly again, which occurred in October 2004.  Dr. Messerly continued Plaintiff's diagnoses and prescribed Xanax.  From

---

[4]The Tri-County Appointment Record Log reflects that after intake, Plaintiff was scheduled to come in for three counseling visits, one of which was cancelled.  The copy quality of the log is poor, and the handwriting of the clinician's initials is nearly illegible, but the Court is able to discern the letter "J" next to the two visits Plaintiff attended, which the Court believes refers to Counselor J. Serna.  (R. at 287.)

November 2005 through October 2006, Dr. Messerly continued to see Plaintiff periodically for medication management.  During a May 2006 visit, Dr. Messerly noted that Plaintiff was "doing fine" and that Plaintiff reported she rarely uses her sleep medication.  (R. at 672.)  Also in May 2006, Dr. Messerly completed a mental residual functional capacity evaluation.  Dr. Messerly reported that Plaintiff would be extremely limited in relating to supervisors; markedly limited in working with others without distracting them; mildly limited in ability to respond to co-workers or peers; mildly limited in ability to relate to the general public and maintain socially appropriate behavior; and markedly limited in all aspects of the functional area of sustained concentration and persistence and in behaving in an emotionally stable manner.  Dr. Messerly further reported that Plaintiff had marked limitation in her ability to behave appropriately and extreme limitation related to tolerating customary work pressures.  Dr. Messerly concluded that Plaintiff's condition would deteriorate under stress due to her struggles with anxiety, poor memory, and concentration that were easily worsened by even minimal stressors.  During a July 2006 visit, Dr. Messerly noted that Plaintiff was adjusting to living alone, was sleeping "ok," and had excessive worry, but "no full blown panic."  (R. at 670.)

In May 2007, Kent A. Colburn, D.O., from Tri-County, drafted a letter stating that Plaintiff was receiving treatment for generalized anxiety disorder, OCD, and an eating disorder. He further noted that Plaintiff struggled with agoraphobia, riding in cars, and being in public places.

In November 2004, a state agency psychologist, Dr. Lewin, conducted a review of the record.  Dr. Lewin gave considerable weight to Dr. Yee's assessment that Plaintiff had only mild to moderate restrictions.  Dr. Lewin concluded that Plaintiff would be able to cope with one-to-

two step instructions; concentrate adequately but not optimally; cooperate superficially with co-workers and the public; cooperate adequately, but not well, with supervisors and family; and if she felt stressed, she might need an occasional break.  In support of her assessment, Dr. Lewin found that some of Plaintiff's claims were not credible.  For example, Dr. Lewin noted that there was no medical evidence in Plaintiff's file of her ever having a stroke.  Dr. Lewin also noted that Plaintiff reported to Dr. Yee that she spent most of her day in bed watching TV and had no phone, yet Plaintiff's brother completed a daily activities form, in which he indicated that he had daily internet contact with Plaintiff and that he would spend time with her from around 10:00 a.m. until 4:00 p.m.  Further, although Plaintiff indicated that she did not socialize, on her daily living activity forms, both she and her brother indicated that every day she ate at her aunt's residence and would meet her friends there.  Dr. Lewin also noted that although Plaintiff reported that she rarely rode in cars because of her extreme fear, she and her brother both noted that Plaintiff would go out daily, and would ride in cars to do so.  Further, Dr. Lewin questioned Dr. Yee's notation that Plaintiff could not count forward because as Dr. Yee noted, Plaintiff did not appear to have trouble with simple instructions.  Dr. Lewin also noted that Plaintiff denied any such problem on her last job; she was required to wait on the public, and did so.  Dr. Lewin also noted that even though Plaintiff reported occasionally not getting along with supervisors, it did not lead to job loss.  Similarly, Dr. Lewin noted that despite Plaintiff's reports of impaired concentration, she utilized the internet.  Finally, Dr. Lewin noted that although Plaintiff made claims of throwing things ten times per month to Dr. Yee, Plaintiff's brother did not report any such outbursts; rather, he indicated that sometimes Plaintiff would become "grumpy with family."  (R. at 396, 488.)

In April 2005, another state agency psychologist, Dr. Chambly, reviewed the record and affirmed Dr. Lewin's assessment.  According to Dr. Chambly, Plaintiff was able to "understand, remember, and carry out simple tasks."  (R. at 504.)  Dr. Chambly found that Plaintiff could make "simple decisions, relate adequately, and focus on tasks."  (*Id.*)  She concluded that when Plaintiff's stress tolerance was reduced, Plaintiff was able to cope with ordinary changes and sustain simple tasks.

The administrative law judge ("ALJ") rendered his decision in February 2008.  He determined that Plaintiff's severe impairments included generalized anxiety disorder; obsessive compulsive disorder; possible personality disorder with dependant features; and obesity.  He also concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  The ALJ, in considering Plaintiff's mental residual functional capacity ("RFC"), found that she was "limited to low stress jobs not involving inherently stressful or hazardous activities, fast paced work, dealing with the public, or more than minimal contacts with supervisors and the public."  (R. at 25.)  He concluded that Plaintiff was "limited to a reduced range of medium work."  (*Id.*)  The ALJ determined that these limitations did not preclude the performance of Plaintiff's past relevant work as a deli cutter/slicer, baker's helper, and meat clerk.  Based upon his finding that Plaintiff could perform past relevant work as well as other work that exists in significant numbers in the national economy, the ALJ found that Plaintiff was not disabled.

In her Statement of Errors, Plaintiff asserted that the ALJ "erred in failing to give controlling weight to the opinion of treating and examining doctors."  (Pl.'s Statement of Errors 6.)  Specifically, Plaintiff referenced the ALJ's "rejection" of "Dr. Schreck's, Tri-County Mental

Health's, and Dr. Sarver's assessments." (*Id*. at 7.)  The Magistrate Judge, in her Report and Recommendation, found that the ALJ's failure to assign controlling weight to the opinions of Counselor Serna and Drs. Schreck, Sarver,  Messerly, and Colburn did not constitute reversible error and that substantial evidence supported the ALJ's decision to deny benefits.  In her Objections, Plaintiff strenuously objects to the Magistrate Judge's evaluation of the weight the ALJ assigned to the medical sources.[5]  Plaintiff asserts that the ALJ improperly weighed the medical source opinions.  More specifically, Plaintiff challenges the weight assigned to "the opinion of the treating facility (Tri-County Mental Health) . . . and the supporting opinion of an examining source," Dr. Sarver.  (Pl.'s Objections 8.)  In addition, Plaintiff challenges the ALJ's evaluation of Counselor Serna's opinion.

## II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.' "  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the

---

[5]Plaintiff's Objections are replete with vitriolic commentary.  Such language does not advance her position.

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").  Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice withing which the decision-makers can go either way, without interference by the courts.' "  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted).  Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' "  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

**III.**

As noted above, Plaintiff challenges the weight the ALJ assigned to "the opinion of the treating facility (Tri-County Mental Health) . . . and the supporting opinion of an examining source," Dr. Sarver.  (Pl.'s Objections 8.)  Plaintiff also asserts that the ALJ erred in his evaluation of Counselor Serna's opinion.  The Court considers Plaintiff's arguments in turn.

**A.    The Treating Facility**

Plaintiff, in her Statement of Errors and again in her Objections, repeatedly refers to Tri-County as a treating source, maintaining that Tri-County's opinions are entitled to controlling weight.  Plaintiff explains that "[t]he crux of [her] argument is that her counselor and her treating medical health source worked for the same agency and separately provided interlocking opinions

-11-

. . . ." (Pl.'s Objections 4.)  Plaintiff also asserts that the ALJ and Magistrate Judge mischaracterized Tri-County's treatment of Plaintiff, that "Tri-County . . . [has] treated [Plaintiff] over a period of nine plus years." (Pl.'s Statement of Errors 8.)  The Magistrate Judge acknowledged Plaintiff's contention that Tri-County qualified as a treating source, but declined to apply the standards utilized in evaluating the medical opinions from treating sources to all of the opinions rendered from individuals employed at Tri-County.  The Magistrate Judge did not err in this regard.

Plaintiff's treating facility argument is creative, but contrary to authority.  Tri-County did not, and a facility cannot, author an opinion.  Rather, Social Security Ruling 06-03p provides that "only 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. §§ 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."  SSR 06-03p (citing 20 C.F.R. §§ 1527(d) and 416.927(d)).  "Acceptable medical sources" include only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a).  Thus, only these sources, not treatment facilities, can render medical opinions that may be entitled to controlling weight.

In addition, an individual does not automatically qualify as a treating source simply because they are employed at a facility where the claimant regularly receives treatment.  To qualify as a treating source, the acceptable medical source must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).  Accordingly, the Court now considers whether the ALJ erred in the weight

-12-

he assigned to Tri-County employees, Dr. Messerly, Counselor Serna, and Dr. Colburn.

The Magistrate Judge set forth the standards for evaluating medical opinions as follows:

> The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(d), 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Some opinions, such as those from examining and treating physicians, are normally entitled to greater weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). For example, the ALJ will generally "give more weight to the opinion of a source who has examined [the patient] than to the opinion of a source who has not examined [the patient]." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Nevertheless, in considering an examining source opinion, the ALJ will consider other factors including supportability, consistency, and the nature of the relationship between the claimant and the source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).
>
> In addition to examining sources, the ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . ." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Blakley*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, a physician must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).
>
> Even if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must still meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion  controlling weight:
>
> > [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

the specialization of the treating source—in determining what
weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice
of determination or decision for the weight [the ALJ give[s] [the claimant's]
treating source's opinion."  20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2).  The
United States Court of Appeals for the Sixth Circuit has stressed the importance
of the good-reason requirement:

"The requirement of reason-giving exists, in part, to let claimants
understand the disposition of their cases," particularly in situations
where a claimant knows that his physician has deemed him
disabled and therefore "might be especially bewildered when told
by an administrative bureaucracy that she is not, unless some
reason for the agency's decision is supplied."

*Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.
1999)).

Finally, the Commissioner reserves the power to decide certain issues,
such as whether a patient is disabled.  20 C.F.R. §§ 404.1527(e), 416.927(e).  The
opinions of treating physicians on such issues are generally not entitled to special
significance.  *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); 20 C.F.R.
§§ 404.1527(e)(3), 416.927(e)(3).  Nevertheless, "[w]hile controlling weight will
not be provided to a treating physician's opinion on an issue reserved to the
Commissioner, the ALJ must 'explain the consideration given to the treating
source's opinion(s).'"  *Bass*, 499 F.3d at 511 (quoting SSR 96-5: Policy
Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues
Reserved to the Commissioner, 61 Fed.Reg. 34471, 34474 (Soc. Sec. Admin. July
2, 1996)).

(Report and Recommendation 15–17.)

### 1.    Dr. Messerly

The Magistrate Judge analyzed the appropriateness of the weight the ALJ assigned to Dr.

Messerly as follows:

In May 2006, Dr. Messerly completed a mental residual functional
capacity evaluation.  (R. at 625–26A.)  She opined that Plaintiff had some

disabling mental limitations.  (*Id.*)  The ALJ considered Dr. Messerly's assessment, but did not give it "significant weight other than to the extent of the restrictions assessed in the residual functional capacity."  (R. at 30–31.)  The ALJ explained that:

> Dr. Messerly's assessment is not given controlling weight because she does not explain in any detail the basis for such degree of mental incapacity.  Her medical notes do not show any objective testing done, particularly with regard to [Plaintiff's] allegation of memory problems.  Mostly, the record revolves around the [Plaintiff's] complaints and especially with regard to her physical conditions (of which there are no "severe" ones other than obesity).
>
> The record suggests that [Plaintiff] only saw Dr. Messerly for a few visits just starting two months before the December 2003 hearing in the prior decision and that she stopped in April 2004, with the unfavorable decision issued in May 2004 and she did not return again until after the Appeals Council found no basis for review.  Then, in September 2004 she alleged having hallucinations to a counselor when she called asking to get back into seeing Dr. Messerly, yet she denied any hallucinations when she did get to see Dr. Messerly again.  Thus, **there is a significant issue of credibility in the timing of her seeking treatment and misrepresentation of her mental condition (alleging hallucinations).**

(R. at 30.)

The undersigned finds that the ALJ did not err in assigning Dr. Messerly's assessment insignificant weight outside of the restrictions assessed in Dr. Messerly's RFC.  Because Dr. Messerly qualifies as a treating source, the ALJ was required to "give good reasons" for the weight he assigned to her opinions.  *See* 20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2); *Wilson*, 378 F.3d at 544.  The ALJ's explanation satisfies the good-reason requirement.  (*See* R. at 30.)  In addition, substantial justification exists for crediting Dr. Messerly's assessment little weight.  As the ALJ noted, Dr. Messerly fails to support her opinion with clinical exam findings or otherwise explain the basis for her opinion.  (*See id.*); *see also* 20 C.F.R. §§ 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Substantial evidence also supports the ALJ's assertion that Dr. Messerly's records consist primarily of Plaintiff's allegations and diagnoses.  (R. at 627–41, 643–48,

-15-

669–72, 674–75.).  As such, these records are not considered medical opinions and reveal little about the severity of Plaintiff's alleged impairments.  *See Bass*, 499 F.3d at 510; *Higgs v. Bowen*, 880 F.2d at 863.  Finally, the ALJ noted issues of credibility in Plaintiff's representation of her mental condition.  (R. at 30.) Accordingly, the undersigned finds that the ALJ did not commit reversible error with regard to the weight he assigned to Dr. Messerly's opinion.

(Report and Recommendation 23–24.)

The Court agrees with the Magistrate Judge's analysis and conclusion.  The ALJ satisfied *Wilson's* good-reason requirement, sufficiently setting forth the reasons he declined to afford Dr. Messerly's opinion controlling weight.  In addition, in determining what weight to afford Dr. Messerly's opinion, the ALJ considered appropriate factors, namely, the length of Plaintiff's treatment relationship with Dr. Messerly; the nature and extent of the treatment relationship; the supportability of Dr. Messerly's opinion, and the consistency of her opinion with the record as a whole.  *See Wilson*, 378 F.3d at 544.  Upon a *de novo* review of the record, the Court concludes that the reasons the ALJ set forth for the weight he assigned to Dr. Messerly's opinion are supported by substantial evidence.  Finally, contrary to Plaintiff's assertions, the ALJ did not reject Dr. Messerly's opinion in its entirety.  Instead, even though he did not afford Dr. Messerly's opinion controlling weight, the ALJ he did give significant weight to Dr. Messerly's opinions that Plaintiff's ability to deal with the public, coworkers, and supervisors was limited. Consequently, in considering Plaintiff's RFC, the ALJ determined that Plaintiff was limited to working in positions in which she would have no contact with the public and only minimal contacts with supervisors and coworkers.  Likewise, he gave significant weight to Dr. Messerly's opinion that Plaintiff was limited in the area of sustained concentration and persistence. Consequently, the ALJ limited Plaintiff to low-stress jobs that do not involve inherently stressful or hazardous activities or fast-paced work.

-16-

In her Objections, Plaintiff makes much of the ALJ's reliance on a non-examining doctor's opinion.  Plaintiff asserts that the ALJ's reliance on this "outdated, non-examining opinion . . . mocks the very notion of basing a decision upon the substantial evidence provided by the record as a whole."  (Pl.'s Objection 9.)  Plaintiff is referencing Dr. Lewin's November 2004 opinion.  A review of that opinion demonstrates that the ALJ, in relying on this opinion, does not mock, but rather embraces the notion that a decision must be based upon consideration of all relevant evidence in the case record.  The reliability of Dr. Messerly's opinion, like the opinions of Drs. Colburn, Sarver, and Schreck, depends heavily upon the veracity of Plaintiff's presentation.  Dr. Lewin, unlike Drs. Messerly, Colburn, Sarver, and Schreck, was able to review the entire file, enabling him to identify numerous inconsistencies in Plaintiff's presentation.  For instance, although Plaintiff reported to these physicians that she did not socialize and rarely rode in cars because of her extreme fear and anxiety, Dr. Lewin noted that both Plaintiff and her brother reported on questionnaires that Plaintiff socialized daily at her aunt's house and that Plaintiff went out daily, and would ride in cars to do so.  Dr. Lewin also noted inconsistencies in Plaintiff's reports to these physicians regarding her abilities to handle simple instructions; her ability to concentrate; and her ability to handle simple instructions.  Although Plaintiff reported to Dr. Yee that a stroke had impaired her memory, Dr. Lewin pointed out that there was no medical evidence that Plaintiff ever suffered a stroke.  Social Security Ruling 06-03p explicitly recognizes that "there is a requirement to consider all relevant evidence in an individual's case record," including evidence from "non-medical sources . . . such as spouses, parents, friends and neighbors."  SSR 06-3p.  Thus, Dr. Lewin and the ALJ properly considered Plaintiff's and her brothers' representations in evaluating the veracity of Plaintiff's presentation.

### 2.    Counselor Serna

Plaintiff asserts that both the ALJ and the Magistrate Judge failed to evaluate Counselor Serna's opinion in light of Social Security Ruling 06-3p.  Plaintiff also asserts that both the ALJ and the Magistrate Judge wrongfully concluded that Counselor Serna had not seen Plaintiff.

The ALJ considered Counselor Serna's opinion, but rejected it as follows:

> The claimant stopped going [for appointments with Dr. Messerly] for a time but called in June 2004 about having the doctor write a letter about her ability to work . . . .  There is no letter from the doctor related to that issue.  However, in June 2004, a counselor, Ms. Serna, said that "in her strong opinion" the client could not be gainfully employed . . . .  There is actually no evidence that Ms. Serna had even seen this person.  The intake assessment was done by Ms. de Lange.  There is only a memo from Ms. Serna about a referral to Dr. Messerly at the apparent request of her family doctor . . . .  Ms. Serna's opinion is given no weight as she is not a medically-acceptable source on the issue for purposes of Social Security.  She has rarely, if ever, seen this client, and inability to work is not consistent with the record as a whole.

(R. at 30.)

The Court finds that the ALJ did not err in rejecting Counselor Serna's opinions.  As the Magistrate Judge noted, Counselor Serna is not an "acceptable medical source."  Thus, contrary to Plaintiff's assertions, her opinions are not entitled to controlling weight.  *See* C.F.R. §§ 404.1513(a), 404.1502, 404.1527(d), 416.913(a), 416.902, and 416.927(d).  Plaintiff correctly notes that Social Security Ruling 06-03p supplies guidance on the factors to consider when evaluating opinion evidence from other sources.  These factors include:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and

- Any other factors that tend to support or refute the opinion.

SSR 06-3(p). Plaintiff also correctly notes that there is evidence in the record that Counselor Serna had seen Plaintiff. Plaintiff cites to a 1998 intake form.[6] In addition, the Court has identified another two possible counseling sessions with Counselor Serna, one in September 2003 and one in October 2003. Nevertheless, this is consistent with the ALJ's statement that Counselor Serna "has rarely, if ever, seen this client." (R. at 30.) In addition, as the ALJ notes, Counselor Serna's opinion of disability is not entitled to weight because whether or not a claimant is disabled is a decision reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(e) and 416.927(e). Finally, substantial evidence supports the ALJ's conclusion that Counselor Serna's opinion is not supported by the record.

### 3. Dr. Colburn

The Magistrate Judge analyzed the appropriateness of the weight the ALJ assigned to Dr. Colburn as follows:

In May 2007, Kent A. Colburn, D.O., from Tri-County, drafted a letter stating that Plaintiff was receiving treatment for generalized anxiety disorder, OCD, and an eating disorder. (R. at 685.) He further noted that Plaintiff struggled with agoraphobia, riding in cars, and being in public places. (*Id.*) The ALJ considered Dr. Colburn's opinion, but gave it no weight. (R. at 32.) He

_____

[6]The 1998 intake form lists the intake clinician as "j. serna." After intake, Plaintiff attended only one counseling session in 1998 with Counselor Pegge Riley before being terminated as a client due to Plaintiff's discontinuation of treatment. (R. at 171.) Plaintiff did not seek treatment at the Tri-County facility again until September 2003. Thus, Plaintiff's assertion that she had an ongoing treatment relationship with Tri-County for at least nine years misrepresents the record.

explained that:

> [T]here is no evidence that he has ever seen [Plaintiff] and there is
> no medical diagnosis of agoraphobia by Dr. Messerly, the only
> psychiatrist and mental health treating source of record.  Dr.
> Colburn does not explain the basis for this letter.  He does not state
> that she is disabled and, of course, there is no evidence that he has
> even seen her or is a treating source.  He provided no visit records.
> He provided no objective findings or detailed evidence to seriously
> consider this letter as substantial evidence of anything.

(*Id.*)

> Even though Dr. Colburn qualifies as an acceptable medical source, he
> does not qualify as a treating source because there is no evidence of an "ongoing
> treatment relationship."  *See* 20 C.F.R. § 404.1502.  Nevertheless, the
> ALJ properly rejected Dr. Colburn's statement as Dr. Colburn does not explain the
> basis for his statement and cites no clinical findings or treatment records.  (R. at
> 32, 685.); 20 C.F.R. § 404.1527(d)(3).  Accordingly, the undersigned finds that
> the ALJ's rejection of Dr. Colburn's opinion did not constitute reversible error.

(Report and Recommendation 25.)

Although Plaintiff objects generally to the ALJ's assignment of weight to Tri-County's

opinions, she does not advance any specific objections relating to the ALJ's treatment of Dr.

Colburn's opinion or the Magistrate Judge's analysis.  Upon a *de novo* review of the record, the

Court agrees with the Magistrate Judge's analysis and does not find error with the ALJ's

assignment of weight to Dr. Colburn's opinion.

**B.    Dr. Sarver**

The Magistrate Judge analyzed the appropriateness of the weight the ALJ assigned to Dr.

Sarver as follows:

> In January 2007, Dr. Sarver, a state agency psychologist, evaluated
> Plaintiff at the request of the Bureau of Disability Determination.  (R. at 201.)
> The ALJ considered Dr. Sarver's assessment, but gave it "[n]o weight."  (R. at
> 31.)  The ALJ explained that:

> While [Dr. Sarver] stated that "the veracity of claimant's performance is reliable," it clearly was not.  There are many discrepancies in her presentation to Dr. Sarver and too many to be all discussed.  Most significant, however, is that Dr. Sarver had examined this person before in March 2002 and there were no significant problems with cognitive functioning at that time, in terms of memory or other parameters . . . .  There was no evidence of a personality disorder then, and she was forty nine years old at the time.  Further, treating source records from Tri-County, where she saw Dr. Messerly, the psychiatrist, do not indicate any evidence of a personality disorder, borderline intellectual functioning (or other intellectual deficit), evidence of any reading or writing disorder, or social phobia.

(*Id*.)  The ALJ then provided additional examples of discrepancies in Plaintiff's presentation to Dr. Sarver.  (R. at 32.)  For example, the ALJ noted that although Plaintiff presented with pain behaviors such as moaning and groaning and facial grimacing throughout the interview, there was no objective evidence of any disorder that would be causing such severity of pain.  (*Id*.)  The ALJ further noted that Plaintiff's presentation of difficulty reading and filling out the forms was not supported elsewhere in the record.  (*Id*.)  Because the record demonstrated that Plaintiff was able to do things that Dr. Sarver found Plaintiff incapable of doing, the ALJ opined that Plaintiff "apparently feigned" her limited presentation.  (*Id*.)  The ALJ therefore concluded that Dr. Sarver's "assessment cannot be accepted as adequately supported by the evidence of the record as a whole."  (*Id*.)

The undersigned finds that the ALJ did not err in rejecting Dr. Sarver's opinion.  First, although Dr. Sarver did examine Plaintiff twice, once in 2002 and once in 2007, he is not a treating source within the meaning of the Social Security Act.  Instead, Dr. Sarver was a consultative examiner who Plaintiff saw twice for disability assessments.  As such, he did not have an ongoing treatment relationship with Plaintiff.  *See* 20 C.F.R. § 404.1502 (defining "treating source" as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you"); *see also Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *9 (6th Cir. Nov.15, 2000) (concluding that although the physician examined the claimant on three occasions, he was not a treating source); *Yamin v. Comm'r of Soc. Sec.*, 67 Fed. Appx. 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition.").  Accordingly, although the ALJ was required to consider Dr. Sarver's opinions, those opinions were not entitled to the deference or procedural protections afforded to treating physician opinions.  *See* 20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2).

Furthermore, the ALJ provided ample explanation for rejecting Dr. Sarver's opinions.  He specifically indicated that based upon his review of the record, Plaintiff's presentation to Dr. Sarver was not credible, and therefore, Dr. Sarver's assessment was not adequately supported.  (R. at 32.)  The undersigned finds substantial justification for this conclusion.  A review of Dr. Sarver's assessment demonstrates that the reliability of his assessment hinged upon the veracity of Plaintiff's presentation of her abilities and her reported complaints.  (*See* R. at 676–80.)  For example, Dr. Sarver based his conclusion that Plaintiff lacked reading and writing functionality on Plaintiff's representation that she had difficulty filling out forms and her inability to recite the alphabet or count backwards from twenty to zero . . . .  (*See id.*)  Likewise, Plaintiff's answers to Dr. Sarver's questions formed the basis for his assessment of her reading and writing abilities, abstract reasoning, common sense/judgment and insight.  (*See id*.)  Providing numerous examples of documented discrepancies, both the ALJ and Dr. Lewin concluded that Plaintiff's presentation to Dr. Sarver was inconsistent with the record evidence.  (R. at 31–32, 488.)  In reaching this conclusion, the ALJ indicated that he considered the entire record, specifically citing Tri-County records from Dr. Messerly, Dr. Yee's report, and Plaintiff's own testimony.  (R. at 31–32.)  Because the ALJ's credibility assessment of Plaintiff's presentation to Dr. Sarver was based on consideration of the entire record and supported by substantial evidence, it is entitled to deference.  *See Sullenger v. Comm'r of Soc. Sec.*, 255 Fed.Appx. 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").  Accordingly, the undersigned finds that the ALJ's rejection of Dr. Sarver's opinion did not constitute reversible error.

(Report and Recommendation 17–20) (footnote omitted).

Although Plaintiff objects generally to the ALJ's assignment of weight to Dr. Sarver's opinions, she does not assert any specific objections to the Magistrate Judge's analysis.  Upon a *de novo* review of the record, the Court agrees with the Magistrate Judge's analysis and does not find error with the ALJ's assignment of weight to Dr. Sarver's opinion.

## C.    Dr. Schreck

The Magistrate Judge analyzed the appropriateness of the weight the ALJ assigned to Dr.

Schreck as follows:

In April 2006, Dr. Schreck, Plaintiff's family practice physician, completed a mental functional capacity evaluation form, which noted marked limitations in all functional criteria. (R. at 556–58.) The ALJ considered Dr. Schreck's assessment, but gave it "no controlling or significant weight." (R. at 29.) The ALJ explained that:

> Under diagnoses, [Dr. Schreck] cited obsessive compulsive disorder, generalized anxiety disorder, and eating disorder. These were actually diagnosed at Tri-County mental services and there are treating records from that facility, including records of psychiatrist, Dr. Messerly, which are considered below. Dr. Schreck is not a mental health professional. There is little indication of any significant discussion pertaining to [Plaintiff's] mental problems in his notes other than just general allegations by the patient. His records do not indicate any objective observations indicating that degree of severity of functioning, and he does not detail precise basis for the blanket marked findings.

(*Id*.)

The undersigned finds that the ALJ did not err in rejecting Dr. Schreck's assessment. Unlike Dr. Sarver, Dr. Schreck did have an ongoing treatment relationship with Plaintiff. (*See* R. at 559-61, 563, 565-67, 570-71, 577, 664, 667). Consequently, Dr. Schreck qualifies as a § 404.1502 treating source, and the ALJ was required to "give good reasons" for the weight he assigned to Dr. Schreck's opinions. *See* 20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2); *Wilson*, 378 F.3d at 544. Dr. Schreck's mental RFC assessment, however, is not entitled to controlling weight or special significance because the determination of Plaintiff's RFC is an issue reserved to the Commissioner. *See Bass*, 499 F.3d at 511; SSR 96-5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed.Reg. 34471, 34472 (Soc. Sec. Admin. July 2, 1996)). Nevertheless, the ALJ's explanation satisfies the good-reason requirement. (*See* R. at 29.) In addition, substantial justification exists for crediting Dr. Schreck's assessment little weight. It is undisputed that Dr. Schreck is not a mental health expert. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Indeed, Dr. Schreck repeatedly noted that Plaintiff's mental health issues were being handled by Dr. Messerly. (R. at 569, 570, 574, 578, 581, 665, 666.) As the ALJ noted, Dr. Schreck's mental diagnoses appear to merely parrot those of Dr. Messerly. (*See* R. at 29, 574, 578.) Substantial evidence also supports the ALJ's assertion that Dr. Schreck's treatment notes are devoid of objective observations

relating to Plaintiff's mental health.  (*See* R. at 29.)  Instead, Dr. Schreck merely
noted diagnoses and Plaintiff's general allegations.  (*See* 568–71, 573, 577, 580,
581, 583, 585, 586, 664, 666).  These notations are not equivalent to a medical
opinion subject to the good reason rule.  *See Bass*, 499 F.3d at 510 (noting that to
be considered a medical opinion, a treating physician's statement must be a
medical judgment and more than a mere observation or restatement of Plaintiff's
own testimony); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere
diagnosis of [the condition] . . . says nothing about the severity of the condition."
(citation omitted)).  Accordingly, the undersigned finds that the ALJ did not
commit reversible error with regard to the weight he assigned Dr. Schreck's
opinion.

(Report and Recommendation 20–22.)

Although Plaintiff objects generally to the ALJ's assignment of weight to Dr. Schreck's

opinions, she does not advance any specific objections.  Upon a *de novo* review of the record, the

Court agrees with the Magistrate Judge's analysis and does not find error with the ALJ's

assignment of weight to Dr. Schreck's opinions.

## IV.

The Court, having reviewed the record *de novo*, determines that there is substantial

evidence supporting the ALJ's determination that Plaintiff is not disabled, as defined in the

Social Security Act.  Accordingly, the Court **OVERRULES** Plaintiff's Objections (Doc. 16) and

**ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 15).  The Commissioner's

decision is **AFFIRMED,** and this action is **DISMISSED**.

The Clerk shall enter final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

S/ James L. Graham
James L. Graham
UNITED STATES DISTRICT COURT

Date: September 23, 2010

–24–